# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

Nos. 05-2978/2979

_____

Harve Porter, by his next friend, Susan
Pierce; Disability Rights Center, Inc.,

          Plaintiffs-Appellants/
          Cross-Appellees,

      v.

Kurt Knickrehm, in his official capacity
as Director of the Arkansas Department
of Human Services; James C. Green,
Dr., in his official capacity as Director
of Developmental Disabilities Services
Kay Barnes; Grover Milton Evans;
Wesley Kluck; Randy Lann; Suzann
McCommon; Thomas Dolislager; Luke
Heffley, in their official capacities as
members of the Board of Developmental
Disabilities Services,

          Defendants-Appellees,

Family and Friends of Care Facility
Residents; Ellen Sue Gibson,

          Intervenors-Appellees/
          Cross-Appellants.

Appeal from the United States
District Court for the Eastern District
of Arkansas.

_____

Submitted: June 15, 2006
Filed: August 8, 2006

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

This appeal stems from the admission of Harve Porter to one of six Arkansas human development centers ("HDCs"). Porter and the Disability Rights Center (collectively "Porter")[1] appeal the judgment of the district court[2] regarding their complaint under 42 U.S.C. § 1983 and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Porter brought a complaint against two employees of the Arkansas Department of Human Services and the members of the Board of Developmental Disabilities Services in their official capacities (collectively "the Officials"). The Family and Friends of Care Facility Residents and Ellen Sue Gibson, Porter's mother and legal guardian (collectively "Intervenors"), intervened in the lawsuit and filed a cross-appeal arguing that the district court erred in requiring reforms in the review process of HDCs for admitted patients. We affirm.

_____

[1] Porter was originally joined by a second plaintiff, Robert Norman, but only Porter's claim is before us. On or about January 15, 2004, Norman was removed from one of the HDCs and taken to a private facility. That was three months after the initial action was filed in this case. Consequently, the district court dismissed Norman's claims, and he is no longer a party.

[2] The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

# I.

Porter is a forty-nine year-old individual with moderate mental retardation and developmental disabilities. He has a history of mental illness and suffers from a seizure disorder. This appeal stems from a time when Porter was confined at one of the six Arkansas HDCs. Previous to that period of confinement, Porter had been committed to several HDCs over many years, but never had a judicial hearing to review his placement. Porter has repeatedly requested permission to leave the HDCs while confined, but he has not been allowed to do so. Porter was admitted to the HDCs voluntarily by the authority of Gibson, his legal guardian.

There are several sources of legal protection currently afforded to persons in situations like Porter's. Arkansas statutory law affords basic procedural review for patients at HDCs. Ark. Code. Ann. §§ 20-48-405 & 406. HDCs have supplemented the statutory protections with internal policies and procedures. These procedures afford some review of the admission process. The existing protections include pre-placement reviews by independent professionals. There are also adversarial administrative proceedings to determine proper treatment and placement. Because HDCs are Medicaid-eligible facilities, there are also numerous protections under the Medicaid regime. Further, in cases like Porter's, a legal guardian must seek a ward's admission to HDCs. However, prior to the filing of the complaint at issue in this case, there were no judicial hearings to review Porter's admission to, or his continuing placement in, one of the HDCs.

Porter filed his complaint alleging that the procedures governing admission and continuing placement were constitutionally infirm. The Officials filed a motion to dismiss. The Officials argued that the Rooker-Feldman doctrine precluded Porter's claim because they believed a grant of relief in the federal action would necessarily void earlier state actions granting guardianship. Further, the Officials argued that Porter had not suffered an injury in fact. Also, the Officials contended that there was

no state action in the institutionalization of Porter. On February 12, 2004, the district court granted in part and denied in part the Officials' motion to dismiss Porter's complaint. The district court rejected the Officials' arguments against Porter's due process claim and allowed that claim to proceed. However, the district court dismissed the equal protection claim without prejudice. The district court also granted the Intervenors permission to intervene. Discovery was allowed to proceed.

After discovery, Porter and the Officials filed motions for summary judgment as to the due process claim. On November 23, 2004, the district court granted in part and denied in part each of the summary judgment motions. Specifically, the district court found that the procedures governing admission to HDCs were constitutionally adequate. However, the district court held that the review policies for continued placement at HDCs did not afford adequate due process to patients when treatment at the facility was no longer warranted.

In response to the order of the district court, the Officials submitted proposed changes to their procedural rules governing the review of patients at HDCs. On June 9, 2005, the district court concluded that the Officials' proposed amended rules provided sufficient constitutional guarantees and served as an adequate remedy to the present case. Consequently, with no remaining claims, the district court dismissed the case.

Porter appeals the district court's judgment that the pre-commitment hearings offer adequate constitutional protections under the Due Process Clause. He proposes a number of alternative procedural protections to supplement the existing procedural scheme. Porter seeks some type of judicial review of the initial and continued placement at HDCs. Further, the Intervenors cross-appeal and argue that the district court erred in finding that the review procedures at HDCs were constitutionally inadequate. However, as the Officials agreed to change the policies of HDCs in

response to the order of the district court, they do not join the Intervenors in their cross-appeal.

## II.

We review the district court's denial of a motion for summary judgment de novo. Falls v. Nesbitt, 966 F.2d 375, 377 (8th Cir. 1992). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under Mathews v. Eldridge, 424 U.S. 319 (1976), there are three factors set forth to determine whether a state has provided constitutionally adequate procedures in cases like this one: (1) the private interest that will be affected by the state action; (2) the risk of erroneous deprivation of that interest through the procedures used, and the value of any additional or substitute procedures; and (3) the state's interest. Id. at 334-35. Thus, the Mathews test seeks to balance the liberty interest of a hypothetical plaintiff with the interests of the relevant governmental authority.

Porter's interest in this case is freedom from confinement. Such an interest is recognized as deserving procedural constitutional protection and meets the first factor under Mathews. See Addington v. Texas, 441 U.S. 418, 425 (1979). The Third Circuit has held that a person involuntarily committed to an institution for twenty-eight years without a judicial hearing had "been deprived of her liberty to be free from commitment without procedural due process." Clark v. Cohen, 794 F.2d 79, 86 (3d Cir. 1986).

The state argues that Porter's health and safety are also interests that are best served by his admission to one of the HDCs. However, since this case is about the

procedures and not the substance of Porter's admission, this argument is not germane to the <u>Mathews</u> test. Even under the judicial hearings proposed by Porter, he could very well be admitted to one of the HDCs. Consequently, his health and safety would be considered during those judicial hearings. For the purposes of <u>Mathews</u>, it is enough to say there is a substantial liberty interest, like the freedom of confinement, to meet the first factor.

Having determined that a liberty interest exists, we must determine what process is required to protect that interest. The question is whether the procedures afforded under Arkansas state law and the HDCs' policies are constitutionally sufficient.

In answering this question, the district court applied the United States Supreme Court precedent of <u>Parham v. J.R.</u>, 442 U.S. 584, 606 (1979), and found that only minimal protections were needed to meet the constitutional requirements. <u>Parham</u> applied the <u>Mathews</u> test to a situation similar to the present case and found no constitutional violation. <u>Id</u>. at 600. Porter argues that <u>Parham</u> is clearly distinguishable from the present case because it involved the commitment of children and not adults. The district court implicitly ruled that because Porter was child-like in many respects (such as by being under the care of a guardian) his commitment to one of the HDCs was "voluntary" and not subject to substantial judicial oversight. Porter contends that the district court made an error of law by treating Porter as a child and, consequently, applying <u>Parham</u>. We disagree.

We believe that impairment on the basis of retardation is sufficiently similar to impairment based upon age. Porter was placed under the care of a legal guardian. Consequently, his control over his own affairs was more limited than that of a typical adult. In this way, Porter's situation is a close analogue to that of a minor, subject to care by a parent or guardian. <u>See</u> <u>Thomas S. v. Flaherty</u>, 902 F.2d 250, 254 (4th Cir.

1990). If Porter wishes to allege that he is not properly represented by his guardian, there are existing legal mechanisms for challenging his guardianship.

Porter contends that there are inherent problems in allowing a guardian to admit patients like Porter to HDCs. Specifically, Porter argues that there is a potential conflict of interest between a guardian and a mentally retarded adult ward. Because these wards often receive care under Medicaid when they are admitted to institutions, there is a financial incentive to place them there. Porter also argues that there is also a general relief from having to care for a mentally retarded person. Porter also notes that those working at HDCs have institutional incentives to look at interests other than those of the ward. Chiefly, Porter argues that employment by the state gives a motive to maintain the existence of HDCs through admission of persons like Porter. Consequently, Porter argues that some independent judicial oversight of the process is warranted.

Porter contends that the proposed substitute judicial procedures would alleviate the potential errors created by the conflicts of interest between Porter, his guardian, and the employees of HDCs. We agree that judicial oversight would provide heightened protection. However, Porter has failed to show that the current protections are inadequate under Parham. Before admission, any person must receive careful examination by physicians. There is an adversarial review process. The conflicts of interest outlined by Porter are all hypothetical and speculative. There is no actual impropriety by Gibson alleged in this case. While it is possible to imagine factual scenarios where such conflicts do exist and judicial oversight is warranted, there are no facts to support such allegations in the present matter. If such a conflict did exist, it could be addressed through guardianship decisions or a suit by the guardian against the state. Parham simply does not require the panoply of protections suggested by Porter.

Therefore, we affirm the judgment of the district court that the existing protections in the admission to HDCs are sufficient.

## III.

The Intervenors appeal the district court's judgment that the post-admission review procedures that were afforded patients (before the HDCs changed policies) were constitutionally inadequate. This cross-appeal has an unusual procedural posture. The Officials have decided not to appeal the judgment of the district court on this issue. In fact, they adopted policy changes in response to the district court's order and had those changes approved by the district court. Consequently, it is unclear by what authority the Intervenors are contesting the judgment of the district court. Ultimately, we conclude that the Intervenors do not have standing to bring their cross-appeal.

"To maintain standing to appeal, an intervenor must have suffered an injury in fact that is fairly traceable to the challenged action and that is likely to be redressed by the relief requested." Schulz v. Williams, 44 F.3d 48, 52 (2d Cir. 1994) (citing Allen v. Wright, 468 U.S. 737, 751 (1984)). The injury in fact that is at issue must be more than a "mere interest in the problem" and that interest must not be "hypothetical" in nature. Id. (internal citations omitted). Typically, an intervenor can maintain a lawsuit after resolution by the original parties in only very narrow circumstances. See, e.g., Horn v. Eltra Corp., 686 F.2d 439, 440-41 (6th Cir. 1982) (noting that intervenors can only maintain an existing suit in limited situations such as when they have a separate basis for jurisdiction against the defendants). Here, there is still an active lawsuit insofar as Porter has brought an appeal, but the particulars of the cross-appeal were resolved by the parties after the district court entered an order on the issue.

In this case, the Intervenors argue two grounds[3] for allowing their cross-appeal. First, the Intervenors contend that the district court's decision might limit flexibility of decision-making for future patients. Second, they argue that the district court's opinion might set a precedent for future restrictions on the guardian-ward relationship.

These arguments are hypothetical in nature. We cannot say whether the district court decision will be used by other courts and decision-makers to erode the guardian-ward relationship. Further, the Intervenors are unable to explain how the decision of the district court has, in fact, undermined the flexible response abilities of HDCs. Insofar as the decision of the district court was integrated into the policy changes adopted by the HDCs, the Intervenors are free to bring a claim against the Officials if and when those policy changes abridge their rights or interests.

The Officials or the HDCs could have adopted the changes to the review procedures at any time. That they could have done so illustrates why the Intervenors do not have a legal avenue to appeal the judgment of the district court on this issue. The HDCs and the Officials have an interest in the policies adopted by the HDCs in regard to their patients. If they decide collectively or individually to amend those procedures, that is their prerogative. If the Intervenors decide that any proposed changes disrupt their guardianship relationships with patients or otherwise affect the rights of patients, they could file claims against the Officials. However, in the present case, the Intervenors have not done so. Consequently, if there is a claim to be brought, it should be in a separate action. The Officials have decided not to appeal the

---

[3] The Intervenors offer a third reason for allowing their cross-appeal, but after reviewing it, we cannot distinguish it from the first reason offered. The Intervenors appeal to the need for a "flexible response" in their third argument, but that is the essence of their first argument as well. Insofar as there is any discernable difference between the two arguments, we believe that the third argument fails for the same reasons as the first discussed herein.

decision against them and we see no compelling reason to allow the Intervenors to do so in their place.

## IV.

For the foregoing reasons, we affirm the judgment of the district court.

_____